To the second case this morning, Baylay v. Etihad Airways. Good morning, Riders. May it please the Court and Counsel. This case involves the Foreign Sovereign Immunity Act, primarily it involves two pilots that were involved in an event at the Westin here in town. The primary focus of the opening brief that we have is that the trial court erred in finding that there wasn't jurisdiction under the Foreign Sovereign Immunity Act in this case. The district court had found that the Illinois Workers' Compensation Act applied. Let me start you right out, if I might, because where in the record did you preserve an argument that man is the alter ego of Etihad? The defendants contend that you did not raise this argument below, and while you're answering that please, did you preserve the argument that Etihad is not an employer, if that term is understood under the IWCA? I'm not quite sure I understand your question, Judge. Under the Illinois Workers' Compensation Act, one of the things that I talk about is that although employers may include states, local municipalities, and whatnot, a foreign state or a foreign nation is not included as an employer for purposes of the act. Is that your question, Judge? Well, it's the second question, but the first question is where in the record do you preserve the argument that Mr. Pilot Man is the alter ego of, how do you say it, Etihad or Etihad? Atiyahd. Atiyahd? Atiyahd. Yes. Thank you. So for purposes of the alter ego issue that you're raising, Judge, there are multiple counts that were against Atiyahd, including negligent retention, and so if your question is whether or not we were arguing that Man was acting for the benefit of Atiyahd at the time that he struck the plaintiff, I don't believe that that is something that we had argued. You're correct in that regard. Right, so back to the Foreign Sovereign Immunity Act issue, countries are presumed immune, and then when the FISA was enacted it talked about that it was putting into law that immunity and that immunities would be waived subject to certain exceptions that are articulated in the act. Specifically, in this particular case, Atiyahd agrees that the commercial exception applies. The ethnics... So are you claiming that FISA creates stand-alone jurisdiction to hear claims in federal court, or does it create jurisdiction only to decide the sovereign immunity question? As I indicated in my brief, Judge, it's the plaintiff's position that Atiyahd, I'm sorry, the FISA is the only statute that allows an entity to have jurisdiction over a foreign nation or a foreign state. And so in this particular case, that foreign state is UAE and it's through Atiyahd, and there isn't any carbon. I talked about this to some degree given Atiyahd's response, and I talk about in the reply, that essentially what Atiyahd seems to be doing, and it's in the absence of any statutory authority allowing it or any case law to support it, is to create a two-part manner to address claims that Atiyahd would say fall within the workers' comp. And that's that, first, the issue of whether or not immunity has been waived, that has to be done within a court, whether state or federal. That's a pretty important question. Whether or not immunity has been waived? Well, absolutely, I agree. In my brief goes to great lengths to not only say that the courts are the only location where the issue of immunity can be addressed and determined to be waived, but moreover there isn't anything in any of the statutes that we're talking about, whether it's the FISA or the Illinois Workers' Compensation Act, that then allows or compels a plaintiff to then have the district court or a circuit court decide the issue of immunity and whether it's been waived, and then take a second step then of having that case dismissed and then refiled in an agency of the state. There isn't anything in the FISA at all that talks about that, whether we call it litigating or adjudicating Mr. Bailey's claim, that permits some location other than the courts to litigate those claims. And that seems to be what Atiyahd is arguing is that they don't disagree that the district court in this particular case had original jurisdiction to make the determination of of saying once the court, as the arbiter of that immunity, makes that decision, then the district court under the facts of this case would then be divested of its jurisdiction and the plaintiff has to pursue his claim in some other location. It just doesn't exist in the statute. Some other location, you mean in some kind of state court and challenging whether workers' comp is applicable? Not a state court specifically because the FISA permits Mr. Mann, if the facts allowed it, to file his original cause of action in a state court. We know by looking at PACER and things of that nature that frequently Atiyahd would remove those cases to federal court if they were filed in state court under different facts. Well, when do they have to assert FISA? I mean, obviously the airline is happy to waive it, right? Well, I'm not sure that... They benefit by waiving it. Right, I understand that. But the FISA doesn't permit any built-in waiver. The issue of whether or not immunity has been waived is left solely for the courts. So, as I indicated in my reply brief, Atiyahd tries to suggest that because we procured workers' compensation insurance, we have effectively, or by operation, waived the immunity that we might otherwise have as a foreign nation. And so that's why it should go directly to the state agency for adjudication of the employee's claim. And there's just nothing contained in either FISA, specifically FISA, that would permit that. Everything about the FISA and the case law surrounding FISA reaffirms the importance in the role of the federal courts, or courts generally, to make these determinations to litigate these claims. I haven't found a single claim anywhere in any jurisdiction in a court of appeals or in a district court where what Atiyahd is attempting to do has happened, where there is a determination of whether or not immunity has been waived, and then the plaintiff is then compelled to then adjudicate or litigate that in a different jurisdiction. Well, the thing that I look at is both parties, Bailey, they're ones from Great Britain and the other from India, I believe. You're talking about the man, correct? And then the airline is from, it's not Dubai, where is it from? United Arab Emirates. Yeah, okay. So there's nobody other than the injury that occurred in the hotel room in Chicago, I guess. But otherwise, everybody's foreign, and they're the ones that would want to assert FISA to be able to litigate, and they didn't choose to do that, just the opposite. He hustled the pilot, or the guy that used the brass device to club his co-pilot or whatever, he hustled him out of there in a hurry, put up a big bond probably, and now there's nobody there. And they're not asserting the right to be there. I take it it's not asserting the right to be where? Well, I just think that you can call it a waiver or whatever you want. That's what I, when I look at this case initially, I said, well, this case is waived out of here. It's waived out of the federal courts, or it's waived out of... Well, you say, well, maybe there would have been another forum you think you could do something in. I don't know which that would be, in state court, and what may be saying that workers' comp doesn't apply or something, I'm not sure what the defense would be. The defense to what? I'm sorry. I should say the plaintiff would say. Well, the plaintiff would say that we properly filed in federal court because this is an action against a foreign nation. The FISA provides the only mechanism or means for any entity having jurisdiction over a foreign nation. That appears from the language of the FISA as well as the case law interpreting it. There doesn't seem to be any way based in any federal statutes or in the FISA itself that would allow the plaintiff's claim to have been brought in any other location other than a state or federal court. Excuse me, can you... Sorry. That's okay. Can you distinguish Intec USA versus Engel, that Seventh Circuit case that the district court relied on in finding there was no diversity in a case where one foreign citizen is suing another foreign citizen and citizens of states? Okay, Judge. So you're shifting out of the FISA and trying to go to the diversity issue, Judge? I am. Okay. Because time is fleeting. Right. So obviously the strengths of our opening brief, we believe, relies on the FISA and we rely on the case of Tango Music citing Allendale to attempt to assert that there was diversity jurisdiction. I do know that the statute, if we're reading the language of the statute, makes that much more difficult for me. And I concede that that can be so given the fact that the plaintiff is a foreign national and Mr. Mann is a foreign national. But I'm not sure how I can address that, Judge, other than saying that we believe that the Tango case supports or allows for, under these circumstances, there to be a finding of diversity jurisdiction. One of the other things that is important in this particular case is that even if this state agency, the Illinois Workers' Compensation Commission, could have been a proper location for Mr. Mann's claim to have been brought against ATIAD, the other problem is that it falls, the facts of this case fall outside of the exclusivity provisions of the act. In this particular case, it didn't fall within the scope of Mr. Mann, of Mr. Bailey's employment. Certainly because they were on layover, it fell within the course of his employment, but the language that's included in, excuse me, it's a case called Wise v. Industrial Commission, which is cited at page 12 of my reply, and it says, the court, this is the Illinois Supreme Court, the court held that an injury arises out of employment when it originates from some risk related to the employment, thereby establishing a causal connection between the injury and the occupation. In this particular case, Mr. Bailey answering his door in his hotel room at the West End and getting struck by Mr. Mann with the object, certainly that has no relation to his work as a pilot. He was simply there by virtue of him having to be on layover. And so we would argue, and we did in our briefs, that this doesn't fall within the exclusivity provisions of the act, and because it doesn't fall within the exclusivity provisions of the act, it couldn't ever be brought within the Illinois Workers' Compensation Commission. So you thought he extricated himself from any employee relationship when he... I'm sorry? He somehow withdrew from the employee relationship when he clubbed the guy. I mean, you're trying to get it outside of the... They say they were there on a layover, which was a continuing reason why they're there. He opened the door, he said he thought the guy was going to apologize, and also he probably wanted his coat that he left in the restaurant. And so he opens the door, and then he gets clubbed. And somehow, I guess you're arguing that removes him from that employee relationship, so that the Workers' Comp would kick in. I guess that would be your argument, something like that. We certainly agree that this is within the course of his employment in the sense that he was on this mandated layover there at the Western, but because, as I indicated with the Wise case, the language of the Supreme Court of Illinois would make this so that it didn't fall within the scope of his employment. There wasn't a causal relationship between the injury and his occupation as a pilot for ATIET. And so, therefore, even if we could have filed in the Workers' Compensation Commission, which we strenuously disagree with that proposition, it wouldn't fall within there. And so he would have had to file a lawsuit anyway in order to pursue a remedy against Mr. Mann, and to the extent that he wanted to and could, it would be against ATIET. Briefly, and I can certainly supplement should you wish, but just googling prior to today, there was a Commonwealth of Massachusetts Department of Industrial Accidents opinion that was written, and it's back in 2015, I'm not sure why I didn't come across it except it was by googling, it wasn't available to me through any search. And in that, at page four, they talk about this is a different circumstance involving workers' comp, but they found that the, what did they say? Were you talking about supplemental authority right now? Something you haven't cited before? Yeah, only to the extent that it is saying the same thing I said, which is that the administrative judges of the Department of Industrial Accidents are members of the executive branch of government functioning within the agency of the Commonwealth of Massachusetts, and they're not members of the state or federal judiciary, which is, that's what I had argued. And so it was saying that because it couldn't ever have been brought in the Illinois workers' compensation scenario, the federal courts, in this particular case, was a proper venue. So, unless the court has any additional questions. Okay. No. Thank you. Thank you. Ms. Woodley? May it please the court. Good morning, Your Honors. My name is Kelly Smith-Haley. I represent Etihad Airways. Before I begin what I had planned to discuss, I'd first like to address the two questions that Judge Rovner asked counsel that I believe were not answered. First, Judge Rovner asked, did Bailey preserve the argument that alter ego was at play? Then she asked, where in the record did he preserve the argument that Etihad is not an employer? Those answers were not given, and there is no place in the record where those arguments were in fact preserved. Now, Etihad filed a Rule 12b-6 motion to dismiss, stating that Mr. Bailey's claims against Etihad are barred by the exclusivity provisions of the— Hello. I'm sorry. It's—I guess you're not hearing me, and I'm actually screaming in here. We can hear you now, Your Honor. If Bailey agreed that this was a claim subject to workers' comp law, could he have filed it directly— Could he have filed it directly with the Workers' Compensation Commission? Is that the question, Your Honor? Right. The Illinois Workers' Comp—yeah. Yes. The answer to your question is yes. Excuse me. And here's why. But what— What if a foreign state defendant to such a suit objected? Well, that's a different question. Let me answer your first question. The first—the answer to your first question is yes. He could have sued Etihad directly, and here's why. Etihad has elected to be subject to the Workers' Compensation Commission. As Your Honors previously discussed, FISAIA is set up to provide for immunity for foreign sovereigns in certain circumstances. Under 1605A1, the first prong of FISAIA, a foreign state can waive any immunity from suit. Now, then you look at Section 305A1 of the Workers' Compensation Act. That provision allows employers, such as Etihad, to elect to become subject to the act. Taking those two statutes together, Etihad did, in fact, make such an election and has insurance coverage under Illinois. So therefore, Mr. Bailey could have gone directly to the Commission. Etihad has waived any immunity from suit. Now, with regard to the second question that Your Honor asked, and that's not the facts of this case, but if you had a foreign national that had not elected to become subject and did not register with the Commission, that's a different issue. If you look at what FISAIA says, it says claims to immunity shall be decided in the courts of both federal and state court. If you look at what the Workers' Compensation Commission says, excuse me, the Compensation Act says, all decisions of the Commission are subject to judicial review. So the Illinois state courts do have authority to assess the merits of the Commission's decision. So if you had a foreign state that had not registered and it wanted to assert its immunity, it could have done so through a federal court. And that's a different issue. It may be more complicated if, for some reason, the foreign state is stating that it's not subject to the Commission. But again, that's not the facts of this case. Etihad has explicitly waived its immunity from suit. Okay. So if a court must resolve, in the first instance, whether the foreign state has sovereign immunity, can you respond to that scenario on page 10 of the reply brief? Must a workers' compensation plaintiff file suit twice, once to resolve sovereign immunity, and once in the Commission to decide the merits? Yes, Your Honor. Let me address that. And again, that is separate from our scenario. But in that case, I think the most illustrative case that gives us an example of how this would proceed would be Illinois, I'm sorry, Employers Mutual, which is an Illinois Supreme Court case. And what that court recognized, what the Illinois Supreme Court recognized, is that state courts are not divested of jurisdiction to consider various issues. So were a claimant to file a workers' comp claim with the Commission, and you had a foreign state that somehow believed it was immune from suit, a proper vehicle would be for the whether in a state court or in a federal court. That decision of immunity would thereby be decided by a court, whether state or federal. And it's important to note that we are now both on the same page, that state courts do in fact have jurisdiction under PSIA. So the court could then decide the issue of immunity. And in this case, as Judge Gottschall determined, under the Workers' Compensation Act, there is no common law right of action for negligence, which are the claims here. So it would in fact be proper for the court to say, if there is no immunity, the courts do not have the authority to review a decision until it is, until the administrative remedies are exhausted. So yes, Your Honor, it would, the immunity question would be decided by a court, whether state or federal. If the court determined that immunity had been waived or there was no such immunity, the court, like Judge Gottschall did, would then dismiss it, stating that it's barred by the exclusivity provisions. The claimant in this case, whether Mr. Bailey or somebody else, would have to then proceed with its claim through the Commission, and then that Commission's decision would ultimately be subject to review by the courts. Okay, now, is Etihad subject to jurisdiction, to the jurisdiction of the Commission, the Illinois Commission, because it was engaged in commercial activity carried on in the United States, and it was waived immunity under the SIAB by electing to be subject to the provisions of the Commission? I think we can even stop at the election. That's the first prong of the analysis. The first way to waive is by explicitly or implicitly waiving your immunity. So we certainly contend that we have waived immunity. Now with regard to the commercial exception, we have not analyzed that in the briefs, but in reviewing the case law and general FISAIA language, that likely would apply as well, but I don't think Your Honor even needs to get there. I think you can recognize that Etihad explicitly waived immunity. What in FISAIA allows that, you know, the waiving by electing to be subject? Certainly, Your Honor, that's in 1605 A.1. What this says is, a foreign state shall not be immune from the jurisdiction of courts of the United States or of the states in any case in which the foreign state has waived its immunity either explicitly or by implication. And in this case, we would contend that we have explicitly waived it. Okay. Ultimately, in workers' comp, the reason that, you know, they don't go to any negligence and other things is because it's just an automatic, you get injured on the job, your medicals are paid for. And that's the whole point. But it doesn't go well beyond that into a lot of punitive damages and other things. You know, you get compensated for whatever the injury is, and that's what workers' comp is about. And that's not a very good alternative maybe for whatever the plaintiffs might want here. I agree, Your Honor. That is the way Illinois has set up our system. It's the quid pro quo for having a workers' compensation act in general. And in some cases, the employer is on the hook through no fault. And that is just the system we have. And Illinois is not unique in that system. This is, you know, a 50-state system that we have now employed. Now, having determined that the Commission has the authority to adjudicate claims subject to review by the Illinois courts, excuse me, the district court correctly determined that Mr. Bailey's claims for negligence, negligent retention, and willful and wanton conduct are, in fact, barred by the exclusivity provisions of the Act. Sections 5A and 11 of the Act provide that there's no common law or statutory right to recover damages from the employer other than what is set forth in the Act. Based on this, cases, the courts routinely hold that negligence claims are barred and that there is no employer liability for all common law negligence claims, which is what we have in this case. That means that if an employer, such as Etihad, is sued for negligence, it can raise the exclusivity as an affirmative defense, which is what we did here. Now, in order to overcome that exclusivity, Mr. Bailey needed to establish one of four things. And as the district court correctly held, he could do none of that. First, let me address each in turn. First, he needed to show that his injuries were not accidental. Now, according to Mr. Bailey, in his briefs he argues that the injuries were not accidental because they were the result of Mr. Mann's alleged intentional conduct. The Supreme Court case of Mirbrae v. Marshall Field squarely addresses this and says that intentional injuries are accidental because they are unexpected and unforeseeable from the injured employee's point of view. Mr. Bailey has not distinguished that, and in fact, it's not until we get to the reply brief that he even addresses it. Second, the district court correctly held that Mr. Bailey's injuries arose from his employment. Now, I understand that Mr. Bailey claims they're not arising from his employment because they were not sustained in his duties as a pilot. What Mr. Bailey is refusing to acknowledge is that when you have a traveling employee, such as an airline pilot, the standard is different. And in that case, what you need to assess is whether or not the conduct was reasonable and foreseeable and could be anticipated by the employer, which is what we have in this case. Now, Your Honor, I see that I'm out of time. Go ahead, thank you. Thank you, Your Honor. So, in this case, Mr. Bailey has alleged that he was engaging in conduct that was reasonable and foreseeable from Eddie Hodge's point of view. If you look at the facts of his second amended complaint, he claims that Eddie Hodge paid for his hotel room. He was in an Eddie Hodge-arranged hotel room. He was transported there by Eddie Hodge. He alleges that at all times, he is, all crew members are representatives of Eddie Hodge. He claims that he was in his hotel room after having dinner with his crew members when he reasonably opened the door to a fellow employee who he believed was coming to deliver a coat and possibly apologize for skipping out of the bill. His actions, as alleged by Mr. Bailey, were reasonable and foreseeable. It's conduct that an airline pilot would be engaging in on a work-related layover, as the district court correctly held. Now, you heard Mr. Bailey say that he's not disputing that the injuries did, in fact, occur during the course of employment. So that third exception is not at issue. And then fourth and finally, the exception addresses whether or not the injuries are compensable under the Act. And there's ample case law that says that workplace assaults and batteries are compensable under the Act, as long as the claimant is not the alleged aggressor, which is not what we have here. So for those reasons... Ms. Kelly-Smith, did you say, I mean, my recollection was that Mr. Sandberg's argument, certainly in the reply brief, was that the course of employment and the scope of employment are different. And that no one had shown that this had happened within the scope of the employment. I mean, that's what I recall. So what did you just say I sort of missed? Certainly, Your Honor. So really what I think we're focusing on is whether or not the injury arises out of employment, which is different than course of employment. So Mr. Bailey and I differ on whether or not this arises out of employment. And as we explained in our briefs, when you have a traveling employee, to address the question of whether or not it arises out of employment, that is a standard that must take into account the fact that he is a traveling employee. And that's what the district court cited for the test, and that is what the case law says. So when you hear Mr. Bailey talk about scope of employment, what he's not acknowledging is the standard for a traveling employee. So it's conduct that's reasonable or foreseeable. If there are no further questions. Thank you. Thank you. Thank you. May it please the court. I'm Adam Shepard, and I represent Sareb Deep Man. If I may begin by addressing Judge Rovner's question to plaintiff's counsel regarding the district court's reliance on INTEC. In fact, the INTEC case is right on point. This court in INTEC cited, by way of example, that a citizen of Mexico could not sue a citizen of New York and a citizen of Canada within the diversity statute. We have the exact same situation here. Mr. Sandberg said that he relies on the Tango case to justify plaintiff's position regarding diversity. But all Tango stands for is that when there's foreigners on both sides of the litigation, diversity is not destroyed. But that's not the situation at bar. So if there was an American plaintiff in addition to the foreign plaintiff, which is not in this case, then he might fall within Section A3 of the diversity statute. Or had Bailey only sued American defendants, then he could fall within Section A3. Mr. Shepard, it appears that Mann maintains a residence in the United States. Is he a citizen of a particular state? Is he a permanent resident alien? I mean, on what basis does he enter the United States and maintain a residence here? His residence, and we filed an affidavit to this effect in the district court when we were presenting arguments before the magistrate judge. He is a resident of the Republic of India. He does not maintain a residence here. Based on that, as I think plaintiff's counsel concedes, the plain language of the diversity statute doesn't appear to save diversity jurisdiction once the claims against Etienne are dismissed here. The Allendale case, which the plaintiff cites in his opening brief, is distinguishable. In that case, there are citizens of United States on both sides of the litigation, and we don't have that here in this case. The Allendale case actually states that a federal court does not have diversity jurisdiction where one foreign citizen is suing both citizens of states and a citizen of a foreign state. I think we're on all fours with that scenario here. Obviously, the Section 84 doesn't apply. That has to do when there's a foreign state as the plaintiff, but that's not the case. It's an individual citizen who's of a foreign state. Based on the foregoing, we ask the court to affirm the district court's ruling regarding diversity jurisdiction, and if there are no further questions, I'll yield to my appellee co-counsel in this case. Thank you. Thank you. Thank you. Ms. Hobson? Good morning. May I please support the counsel? I represent the two Michigan Avenue defendants, the hotel defendants, and the portion of the jurisdiction argument that I want to address is just the issue of whether our third-party complaint for contribution somehow creates jurisdiction. After the airline was dismissed from the case, we had a pending cross-claim for contribution. After they were dismissed, we filed it as a third-party complaint for contribution under Illinois law, under the Illinois Joint Tort Feasors Act. All we seek in the third-party complaint is contribution if our clients were found liable. It is not an independent cause of action. It is one that is an alternative pleading under Illinois law, alternative to our denials and our answer. So as I understand Mr. Bailey's argument, a part of his argument about jurisdiction appeared to be that the third-party complaint for contribution on its own somehow would create jurisdiction for this court to retain jurisdiction. We've already addressed the diversity arguments and as far as his arguments that subparagraph 4, if the diversity statute would somehow create diversity jurisdiction, even if you were to look solely at that third-party complaint, I think we've seen that that's a misreading of that section because that's only if the plaintiff is a foreign state. The second part of Mr. Bailey's argument that the third-party complaint would arise out of the Foreign Sovereign Immunities Act because the only way we could sue them is if there was an exception that applied. However, while FSIA may provide the means and vehicle to obtain the ability to sue them because the question of whether or not there is immunity for that, we've already established here today that the federal and the state court have concurrent jurisdiction over that issue. And the second part of that is really the basis of that third-party complaint is the contribution. And if there were any questions about the FISA and whether that applied, that could be answered by a state court and doesn't need to be answered and this court has not been raised in the third-party complaint. So based on the arguments that we've raised in our briefs, unless the court has any further questions on that kind of narrow issue that I'm addressing here, we also adopt the arguments of my co-counsel regarding jurisdiction that you've already heard. I would ask that you confirm the district court on that issue. Thank you. Thank you, counsel. You have two minutes, but I'll give you two more minutes. So you have four minutes to go. Okay. I don't think I'll need that much time, Judge. One of the most interesting things that was raised by Atiyah just now was redoubling or refocusing this court on the 1605A1 section, which is where they talk about Atiyah can waive any immunity. But what 1605 says is a foreign state shall not be immune from the jurisdiction of the courts of the United States or of the states in any case. And then it goes to one in which the foreign state has waived its immunity either explicitly or by implication notwithstanding any withdrawal of the waiver which the foreign state may purport to affect except in accordance with the terms of the waiver. So based on that... I have to say that my, at this point, and believe you me, I change my mind all the time, but at this point, it seems to me that Mr. Bailey overreads the cases that say diversity is not destroyed by having foreign entities on both sides. It's true. Diversity is not destroyed by having foreign entities on both sides, but in the cases that have been cited, there are also citizens of states on both sides, which is what creates the diversity in the first place. I understand, Judge, your concern about the diversity, and that's why for purposes of my rebuttal, I was going back to address one of the things that Atiyah had raised. So I can certainly understand your perceiving my overread of the diversity statute in the case law. So if I can go back to what I was trying to raise originally, which is that under 605, which is one of the things that Atiyah was addressing specifically here, saying that we waived under 1605A1, and that permits everything to take place in the workers' comp. And that's not what the statute says. The statute says that they can implicitly or explicitly waive immunity, and what that does is that allows for the courts to have jurisdiction over Atiyah. And I think that that's very important because that's what I've been arguing the whole time, is that the courts are the only proper venue for this claim against Atiyah to be taking place. The other argument that Atiyah had made with regard to the fact that the Illinois Workers' Compensation Act permits an opportunity after you have ran the whole course in the state agency to then appeal those decisions to the state court, that's so far past what the FISA permits as far as being able to have jurisdiction over a foreign nation, and the Illinois Workers' Compensation Act does not permit that. And so I'll stand on my briefs on the remainder of the stuff, but I wanted to redouble on the issue that 1605 says the courts have the ability to address it, not an agency of the estate, even if they explicitly or implicitly waive that immunity. Thank you. Thank you, counsel. The court is going to take a 10-minute recess, and we'll come back and hear Case 3 after the 10-minute recess. Thank you.